Joseph WASHINGTON, Plaintiff.

v.

**FORT JAMES OPERATING COMPANY, aka James River Paper Company, Inc., Fort James/NW Service Centers, a Virginia corporation, Defendant.**

No. CIV. 99–1300–JO.

United States District Court,
D. Oregon.

Aug. 7, 2000.

William N. Later, Steenson Schumann, Portland, OR, for Plaintiff.

Edwin A. Harnden, Kurt N. Tandan, Barran Liebman, Portland, OR, for Defendant.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

### PROCEDURAL POSTURE

Joseph Washington brought this action against his former employer, Fort James Operating Company ("Ft. James" or defendant), on September 14, 1999, alleging that Ft. James retaliated against him in violation of the Family and Medical Leave Act ("FMLA") and Oregon common law (wrongful discharge). Washington moved for partial summary judgment on the issue of liability and Ft. James moved for summary judgment on Washington's FMLA retaliation claim. A hearing was held on June 13, 2000, and this Court took the summary judgment motions under advisement. This Court grants Ft. James' motion for summary judgment on Washington's FMLA retaliation claim. Although not alleged in his complaint, Washington also challenges the validity of Ft. James' attendance policy. This Court considered Washington's new theory only to the extent that it did not prejudice Ft. James and found that Ft. James' policy is facially valid. Whether Ft. James' policy as applied to Washington violated the FMLA is a question of material fact for which summary judgment is not appropriate.

Therefore, questions of fact preclude summary judgment on the FMLA viola-

tions that plaintiff alleges occurred on the following dates: February 24 through March 23, April 7 through April 13, May 18 through June 29, November 14, and December 8, 1997. Summary judgment is also not appropriate on Washington's state wrongful discharge claim.

## RELEVANT FACTS

### A. Background

Ft. James employed Joseph Washington from August 18, 1977, until March 18, 1998. Washington suffers from a chronic hiatal hernia and severe corn and callus buildup on his feet. Ft. James terminated Washington on March 18, 1998, due to a large number of unexcused absences.

### B. Ft. James' Attendance Policy

Ft. James has a written attendance policy that applied to Washington. Under that policy, Ft. James charges an employee one "incident" each time he misses more than half a shift of work. Ft. James charges a maximum of three incidents per absence, even if the employee misses more than three consecutive shifts due to illness. Ft. James does not charge any incidents for missed work where an employee's absence resulted from an illness qualified under the FMLA, 29 U.S.C. § 2601 et seq,[1] and the employee submitted proper certification in a timely manner.

In order for Ft. James to credit an FMLA-qualified absence due to a serious illness, the employee must complete a request form and obtain a doctor's certification. If a request form cannot be completed in advance, the employee must complete one within two days after returning to work. Additionally, the employee must have a doctor complete a medical certification form ("certification"), stating the period the employee is autho-

rized to miss work, within fifteen days after receiving the form from the company. Provided the employee returns the completed certification within fifteen days after receiving it from Ft. James, Ft. James will credit the leave as FMLA leave and not assess the employee an incident. If the employee fails to return the certification within fifteen days after receiving it, Ft. James excuses only those absences that occurred up to fifteen days prior to the date the employee returned the certification.

When an employee receives 17 incidents in a rolling 12–month period or 25 incidents in a rolling 24–month period, Ft. James places the employee on a "last-chance" attendance plan. Under the last-chance plan, an employee who has more than seven incidents in the next 365 days faces termination.

### C. Washington's Unexcused Absences

In the 12 months prior to April, 1997, Washington received 21.5 incidents.[2] Washington disputes six of the incidents Ft. James charged him as a result of his February 24 through April 13, 1997, FMLA qualifying absence. Washington submitted his certification for that absence on April 8, 1997. Because Washington's certification arrived 28 days late, Ft. James only excused the 15 days preceeding April 8, 1997, and assessed Washington three incidents. Additionally, because Washington's certification only excused him through April 6, 1997, Ft. James charged him three more incidents for the shifts he missed from April 7 through April 13, 1997.

As a result of these incidents, on April 29, 1997, Ft. James placed Washington on a last-chance attendance plan. After being placed on the last-chance attendance plan, Washington accrued eight incidents within

---

**1.** The FMLA entitles an eligible employee to 12 workweeks of leave during any 12–month period to attend to his or her own serious health condition that makes them unable to perform their job, or the serious health condi-

tion of a spouse, son, daughter, or parent. 29 U.S.C. § 2612(a)(1)(C) & (D).

**2.** Ft. James charges non-excused absences of less than half a shift as half incidents.

the next 365 days. Washington disputes 4.5 of the eight incidents.

Ft. James charged Washington with three incidents as a result of his May 18 through June 29, 1997, absence due to a FMLA qualifying illness because his FMLA certification arrived late. As was the case with his February 24 through April 13, 1997, absence, Ft. James penalized Washington for not returning his completed certification within fifteen days of receiving it. Washington was required to return his certificate by June 7, but did not return his certification until July 1, 1997. Consequently, Ft. James only excused the fifteen days proceeding July 1, and assessed three incidents for the period of absence from May 18 through June 15, 1997.

Ft. James also charged Washington with one and one-half incidents for his November 14 and December 8, 1997, absences, respectively. Washington provided his doctor with a certification form, but his doctor lost it. Washington's doctor sent Ft. James a note on February 9, 1998, verifying the reason for those absences.

D. *Termination*

On March 6, 1998, Ft. James discovered that Washington had accumulated eight incidents since being placed on the last-chance attendance plan, and moved to terminate him. At his termination meeting on March 18, 1998, Ft. James gave Washington an opportunity to contest any incidents leading to his termination. Washington only disputed the incidents assessed because of his November 14 and December 8, 1997, absences, contending that the incidents were protected family and medical leave.[3]

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). · If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *T.W. Elec. Serv. Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *Id.* The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Serv.*, 809 F.2d at 630.

## DISCUSSION[4]

A. *The FMLA*

The FMLA entitles eligible[5] employees to a total of twelve workweeks of leave during any twelve-month period to care for the employee's spouse, child, or parent with a serious health condition, or because of the employee's own serious health con-

---

3. Ft. James' summary of employee review meeting on March 18, 1998 reads, "Joe stated that his doctor would not return the Family Medical Leave medical certification forms for 11/14/97 and 12/8/97. I have reviewed Joe's file and there are also no Employee Requests for Family Medical Leave for these dates."

4. As a preliminary matter, Ft. James filed a motion to strike parts of Washington's affidavit. The challenged portions of the affidavit are irrelevant to this motion for summary judgment. Ft. James' motion [49] is denied

as moot with leave to renew at pre-trial proceedings.

5. Eligible employees are those who have been employed for a minimum of twelve months and have worked a minimum of 1250 hours during that twelve month period and their employer employs 50 or more employees within 75 miles of where the employee works. It is undisputed that Ft. James is a covered employer and Washington is an eligible employee.

dition that makes the employee unable to perform his or her job functions. 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.112(a)(4). When leave is taken pursuant to the FMLA, the FMLA entitles the employee to reinstatement to his or her former position or an equivalent position with the same benefits and terms of employment. 29 U.S.C. § 2612(a)(1)(D).

The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves either inpatient care in a hospital, hospice, or residential medical care facility or continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(A) & (B). In cases where there is no inpatient care, the court must determine whether there was continuing treatment by a health care provider coupled with a period of incapacity. 29 C.F.R. § 825.114(a)(2)(i).

In order to curb potential abuse of the FMLA, Congress included the medical certification requirements. H.R.Rep. No. 103, at 39 (1993); S.Rep. No. 103–3, at 27–28 (1993), 1993 U.S.C.C.A.N. 3. An employer may require that the employee's request for leave be supported by medical certification issued by the health care provider of the employee. 29 U.S.C. § 2613(a). When an employer requests certification, the employer must also provide the employee with notice of the consequences for failing to provide adequate certification. 29 C.F.R. § 825.301(b)(1)(ii).

An employee's certification shall be sufficient if it states (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; and (4) if the leave is for the employee's own serious health condition, a statement that the employee is unable to perform the functions of his or her job. 29 U.S.C. § 2613(b).

■ If the employer finds the submitted certification form insufficient, the employer shall advise the employee of the defi-

ciency and provide the employee a reasonable opportunity to cure. 29 C.F.R. § 825.305(d). An employer cannot discipline an employee for submitting incomplete certification unless it gives the employee a reasonable opportunity to correct any deficiencies in the certification. *Sims v. Alameda–Contra Costa Transit Dist.*, 2 F.Supp.2d 1253 (N.D.Cal.1998).

If an employer questions the validity of the certification submitted by the employee, the employer may require, at its own expense, the employee to obtain a second medical opinion. If the second opinion differs from the first medical opinion, the employer may require, again at its own expense, that the employee obtain the opinion of a third health care provider designated or approved jointly by the employer and the employee. The third medical opinion shall be final and binding on the employer and the employee. 29 U.S.C. § 2613. Thus, the employer can ensure that medical leave is truly needed, and thereby prevent employee abuse, by requiring the employee to obtain the opinion of a second and possibly a third physician.

### B. *Washington's FMLA Retaliation Claim*

■ Washington's complaint is premised on the theory of retaliation. To establish a prima facie FMLA retaliation claim, Washington must show that (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the two actions. *Morgan v. Hilti,* 108 F.3d 1319, 1325 (10th Cir.1997). Once a prima facie case of discrimination is established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's termination. If the defendant can express a legitimate nondiscriminatory reason for the termination, the burden then shifts back to the plaintiff to produce evidence that the reason articulated by the employer is a pretext for the retaliatory reason. *Id.*

In this case, Washington did not produce any evidence tending to show a causal link between his availment of the benefits of the FMLA and his termination. At the hearing, Washington conceded that he had abandoned his retaliation theory and moved for leave to amend his complaint. Ft. James' motion for summary judgment must therefore be granted.

## C. Defendant's Leave Policy Is Facially Valid.[6]

■ Washington also alleges that Ft. James' written policy disqualifying FMLA eligible absences accruing more than 15 days prior to receipt of the employee's completed certification is facially invalid because it does not expressly contain the regulation's unusual circumstances exception to the 15 day rule.[7]

The regulations provide that:

[w]hen the need for leave is not foreseeable ... an employee must provide certification ... within the time frame requested by the employer (which must allow at least 15 days after the employer's request) or *as soon as reasonably possible under the particular facts and circumstances.* In the case of a medical emergency, it may not be practicable for an employee to provide the required certification within 15 calendar days.

29 C.F.R. § 825.311(b) (emphasis added).

While it is true that Ft. James' policy does not expressly provide for waiver of the 15 day certification requirement, the policy's silence on this matter does not make it invalid per se. First, nothing in the policy precludes consideration of unusual circumstances. Second, Ft. James' medical and family leave policy provides that the actual law supercedes the compa-

ny's guidelines. The policy states that "[i]n all cases the actual law supercedes the guidelines herein including eligibility requirements." Nothing in the FMLA requires that a company leave policy list every right and remedy under the FMLA in order to be valid. Ft. James' failure to do so here does not make its policy illegal.

■ Washington further contends that Ft. James may never deny FMLA leave as long as the employee ultimately presents it with proper certification. He relies upon 29 C.F.R. § 825.311(b), which provides "[i]f an employee fails to provide a medical certification within a reasonable time under the pertinent circumstances, the employer may delay the employee's continuation of FMLA leave. If the employee never produces the certification, the leave is not FMLA leave." *Id.*

This court does not agree with Washington's interpretation of the regulations. Washington's construction of 29 C.F.R. § 825.311(b) would render meaningless that section's express requirement that an employee provide certification to his employer within the time frame requested unless particular facts and circumstances justify a delay. The requirement that an employee return his FMLA certification within a reasonable time or else lose his entitlement to FMLA fulfills Congress' desire to balance the demands of the workplace with the needs of families. The FMLA protects an employee from losing his leave when his certification is reasonably delayed and protects an employer from the unreasonable burden of indefinitely maintaining records of potentially eligible but unclaimed FMLA leave. *See* S.Rep. No. 103–3, at 2 (1993), 1993

**6.** At the summary judgment hearing, Washington moved to amend his complaint to allege that Ft. James' attendance policy violates the FMLA, either on its face or as applied to him. Federal Rule of Civil Procedure 15(b) allows a party to amend his complaint at any time provided doing so will not prejudice the other party. This court, therefore, grants Washington's motion to amend his complaint,

but considers Washington's new theories at this summary judgment only to the extent that Ft. James is not prejudiced.

**7.** One example of unusual circumstances that Washington provides is when medical certification is delayed by the employee's doctor and not in the employee's control.

U.S.C.C.A.N. 3. Accordingly, the court concludes that an employer may deny FMLA leave where the employee has failed to timely submit the required certification unless timely submission was not reasonably possible under the employee's particular facts and circumstances.

### D. *Ft. James May Have Violated Washington's Rights Under The FMLA.*

■ Taking into account the fact that Ft. James has not had an opportunity to respond to Washington's amended complaint, summary judgment on the remaining issues is not appropriate at this time. The record before the court indicates that Ft. James may have violated the FMLA by failing to adequately notify Washington of the consequences for failing to submit timely certification and for failing to notify Washington of a deficiency in his certification and allow him time to cure the defect.

#### 1. *Washington's February 24 Through March 23, 1997, Absence*

■ A factual question whether Ft. James timely notified Washington of the consequences for failing to timely submit his certification excusing his February 24 through March 23, 1997, absence precludes summary judgment at this time. The regulations require an employer requesting certification to provide the employee specific, written notice of its FMLA requirements and the anticipated consequences for failing to meet its requirements when the employee first gives the employer notice of his or her need for leave. 29 C.F.R. § 825.301(b)(1). Failure to do so renders a consequence unenforceable. *See,* e.g. *Zawadowicz v. CVS Corp.,* 99 F.Supp.2d 518 (D.N.J.2000) (employer did not comply with the FMLA notice requirements when it failed to advise an employee that medical certification would be required for future, pre-approved FMLA intermittent absences); *Stubl v. T.A. Systems, Inc.,* 984 F.Supp. 1075, 1087 (E.D.Mich.1997) (employer did not comply with the FMLA notice requirements when it failed to specifically inform employee of the consequences for failing to provide medical certification before employee took FMLA leave, although the employee handbook notified employees of the need for medical certification).

Ft. James' family and medical leave request form states that the employee must return the certification within 15 days, but the form does not notify the employee of the consequences for failing to do so. It appears from plaintiff's evidence that Ft. James first notified Washington of the consequences for failing to provide timely certification in a letter he received after his request for leave was denied. Washington has met his burden of production on this issue; therefore Ft. James has the burden of demonstrating a factual issue whether Ft. James notified Washington of the consequences for failing to timely submit his certification before imposing those consequences.

#### 2. *April 7 Through April 13, 1997, Absence*

Factual questions regarding whether Ft. James gave Washington notice and an opportunity to correct a defective FMLA certification and whether Washington suffered from a serious health condition during his April 7 through April 13, 1997, absence preclude summary judgment for these absences. An employer may not deny leave based on a deficiency in the certification if the employer did not notify the employee of the deficiency and provide him a reasonable opportunity to cure. 29 C.F.R. § 825.305(d). Where an employer failed to give an employee an opportunity to correct a deficient certification, the employee was entitled to show that leave was FMLA qualified at trial. *See Murray v. Red Kap Industries,* 124 F.3d 695 (5th Cir.1997) (employee who was terminated for failing to return to work after the time period certified by her physician was given an opportunity at trial to show that she suffered from a serious health condition during that period). *Boyd v. State Farm*

*Ins. Companies,* 158 F.3d 326 (5th Cir. 1999) (employee was rightfully terminated when he failed to submit sufficient medical certification despite repeated requests from employer); *Sims,* 2 F.Supp.2d at 1255 (employee was terminated in violation of the FMLA although the employee's medical certification did not certify medical leave for the employee's entire absence because the employer did not give the employee a reasonable opportunity to cure the deficient medical certification).

In this case, Ft. James had a duty to notify Washington that his certification was deficient and Washington had a duty to correct or contest the alleged deficiency. It is not clear whether Washington was given an opportunity to cure the defective certification, nor whether Washington actually suffered from a serious medical condition from April 7 to April 13, 1997. Summary judgment on this issue is therefore not appropriate at this time.

3. *May 18 Through June 29, 1997, Absence*

Summary judgment is also precluded for Washington's May 18 through June 29, 1997, absence because factual questions exist whether unusual circumstances prevented Washington from submitting timely certification and whether Washington received notice that untimely return of certification would result in the denial of his FMLA leave. Washington contends that the severity of his illness prevented him from timely obtaining and submitting certification.[8] Whether Washington was too sick to timely file FMLA papers is a factual question not appropriate for summary judgment.

■■ Ft. James contends that Washington waived his right to dispute these incidents by failing to challenge the incidents on two previous occasions.[9] In order for a waiver to be valid, the party waiving a right must make a voluntary or intentional relinquishment of that right. *In re United Marine Shipbuilding Inc.,* 158 F.3d 997, 1001 (9th Cir.1998). Whether Washington intentionally waived his right to challenge these incidents is a factual question, also not appropriate for summary judgment.

4. *November 14 And December 8, 1997, Absences*

Finally, a factual question exists whether Washington provided Ft. James certification for his November 14 and December 8, 1997, absences, and if so, whether Ft. James notified him that his certification was deficient and allowed him time to cure the defect.

■ Absences of less than three days may qualify as FMLA leave when taken for treatment of a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention. 29 C.F.R. § 825.114(a)(2)(v); *See also* 29 C.F.R. §§ 825.117 & 825.203. The court and the employer should defer to the health care provider's determination of whether a condition qualifies. *Sims,* 2 F.Supp.2d at 1262. If the employer disagrees with the employee's doctor's evaluation, the employer may require a second and third opinion. 29 U.S.C. § 2613 et seq.[10] Accordingly, certification from

---

8. On June 12, 1997, Washington visited the doctor and received a certification for that period, but was still unable to return to work.

9. Washington had an opportunity to contest the three incidents he received for his May 18 through June 29, 1997, FMLA-qualifying absence when Ft. James notified him that his FMLA leave request was partially denied. Ft. James' letter advised Washington that his FMLA leave request was partially denied and

advised him to contact human resources if he had any questions. Washington also had an opportunity to contest the incidents at his termination meeting.

10. The legislative history of the FMLA also states that the definition of a serious health condition "is broad and intended to cover various types of physical and mental conditions." S. Rep. 103–3, at 27 (1993), 1993 U.S.C.C.A.N. 3.

Washington's physician is prima facie proof that Washington's absence resulted from a serious health condition. However, because the parties dispute whether Ft. James ever received certification for these absences, summary judgment must be denied.

### E. Common Law Claim For Wrongful Discharge Under Oregon Law

 Washington also alleges that Ft. James wrongfully terminated him in violation of Oregon law and that FMLA remedies are or may be inadequate. Normally, employment is at-will in the absence of a contractual, statutory or constitutional requirement to the contrary. *Patton v. J.C. Penney*, 301 Or. 117, 120, 719 P.2d 854 (1986). There is, however, a narrow exception to that general rule. An employee may not be discharged for reasons that contravene public policy. *Nees v. Hocks*, 272 Or. 210, 218, 536 P.2d 512 (1975). Oregon courts generally have allowed wrongful discharge claims for public policy reasons in two situations: (1) when an employee is fired for performing an important public duty or societal obligation and (2) when an employee is fired for exercising private statutory rights that relate to the employment and that reflect an important public policy. *Carlson v. Crater Lake Lumber Co.*, 103 Or.App. 190, 193, 796 P.2d 1216 (1990).

 Even if a particular case fits into the narrow exception to the employment-at-will situation, the availability of a common law remedy is conditioned on the absence of adequate statutory remedies. *Delaney v. Taco Time Int'l*, 297 Or. 10, 16, 681 P.2d 114 (1984). Thus, the availability of an adequate statutory remedy precludes a common law wrongful discharge claim. *Holien v. Sears, Roebuck and Co.*, 298 Or. 76, 97, 689 P.2d 1292 (1984).

 The FMLA provides that any employer who violates the FMLA will be liable to the employee for damages equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost by reason of the violation. In a case where wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, the employer will be liable for any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee. The court can also award interest on the above amount, calculated at the prevailing rate, and liquidated damages, except if the FMLA violation was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation. 29 U.S.C. § 2617(a)(1)(A) & (B). Lastly, the court can award attorney's fees, expert witness fees, and other costs of the action, and such equitable relief as may be appropriate, including employment, reinstatement, and promotion. 29 U.S.C. § 2617(a)(3).

 The FMLA, however, does not provide damages for emotional distress. *McAnnally v. Wyn South Molded Products*, 912 F.Supp. 512 (N.D.Ala.1996)(employee was not entitled to mental distress damages because the FMLA only provided for recovery of lost wages, salary, employment benefits, and other compensation and mental distress was not "other compensation" because they do not involve a quid pro exchange between an employer and its employee); *Settle v. S.W. Rodgers Co.*, 998 F.Supp. 657 (E.D.Va.1998); *Lloyd v. Wyoming Valley Health Care System*, 994 F.Supp. 288, 291 (M.D.Pa.1998). *See also Nero v. Industrial Molding Corp.*, 167 F.3d 921, 930 (5th Cir.1999) (the term "other compensation," appearing as it does with the other terms, implies a quid pro quo exchange for services rendered).

In this case, Washington's remedies under the FMLA may be inadequate because wrongfully discharged employees cannot seek damages for emotional distress under that statute. Accordingly, Ft. James' motion for summary judgment must be denied.

## CONCLUSION

For the reasons discussed above, Washington's Motion for Partial Summary Judgment [22] is DENIED. Ft. James' Motion for Summary Judgment [15] is GRANTED with respect to Washington's FMLA retaliation claim and DENIED with respect to his state wrongful discharge claim. Ft. James' motion to strike [49] is DENIED as moot with leave to renew at pre-trial proceedings.

Therefore, questions of fact preclude summary judgment on the FMLA violations that plaintiff alleges occurred on the following dates: February 24 through March 23, April 7 through April 13, May 18 through June 29, November 14, and December 8, 1997. Summary judgment is also not appropriate on Washington's state wrongful discharge claim.